IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

BVS, INC.,

    Plaintiff/Counterclaim Defendant,

vs.

CREDIT UNION EXECUTIVES SOCIETY, INC.,

    Defendant/Counterclaim Plaintiff.

No. C15-0068

ORDER DENYING MOTION TO DISMISS

## TABLE OF CONTENTS

I.    *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.   *PROCEDURAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . 2

III.  *RELEVANT FACTS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

IV.  *MOTION TO DISMISS* . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    A.   *Standard of Review for a Motion to Dismiss* . . . . . . . . . . . . . . 5
    B.   *Does Count III of BVS' Amended Complaint Allege Fraud with Particularity?* . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
    C.   *Does Count III of BVS' Amended Complaint Fail Because Future Intentions are Not Actionable?* . . . . . . . . . . . . . . . . 8
    D.   *Does BVS' Fraud/Fraud in the Inducement Claim Survive the Integration Clause of the Parties' Written Agreement?* . . . . . . . 11

V.   *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

VI.  *ORDER* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## I. INTRODUCTION

This matter comes before the Court on the Motion to Dismiss Plaintiff/Counterclaim Defendant's Amended Complaint (docket number 25) filed by Defendant Credit Union Executives Society, Inc. ("CUES") on March 16, 2016; the Resistance (docket number 27) filed by Plaintiff BVS, Inc. on April 1; and the Reply (docket number 28) filed by CUES on April 8. Pursuant to Local Rule 7.c, the motion will be decided without oral argument.

## II. PROCEDURAL BACKGROUND

On July 6, 2015, BVS filed a Petition at Law in the Iowa District Court for Linn County. On July 22, 2015, CUES removed the action to this Court. On March 2, 2016, BVS filed a First Amended and Substituted Complaint seeking declaratory relief (Count I), and alleging breach of contract (Count II) and fraud/fraud in the inducement (Count III). CUES filed the instant motion to dismiss on March 16.

On August 28, 2015, both parties consented to proceed before a United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c). The case is set for trial on October 31, 2016.

## III. RELEVANT FACTS

BVS is an Iowa corporation which focuses on helping financial institutions enhance their customer service, employee satisfaction, and profitability through training and technology. CUES is a Wisconsin corporation focusing on leadership development for management-level employees at credit unions.

According to BVS' amended complaint, in early 2011, CUES' existing online training partner ended its relationship with CUES. CUES sought a new partner to provide online learning services to CUES' members and other credit unions. In March 2011, BVS submitted a proposal to partner with CUES, in which BVS would pay CUES a royalty/commission on both new business created by the partnership and renewals of BVS' existing customers. CUES accepted BVS' proposal.

2

BVS' amended complaint lays out the discussion between CUES and BVS regarding the terms of their partnership:

> During . . . discussions, CUES represented that it would provide BVS access/space on CUES' website, in its publications and via speaking roles at CUES' conferences and conventions. CUES also represented that it would not charge BVS for this access/space, given that BVS would be paying CUES hundreds of thousands of dollars in royalties/commissions. Specifically, CUES' vice president and chief financial officer, Dennis Porter, represented to BVS' president Roy Karon both verbally and/or in writing during March-May 2011 that:
>
> a. CUES would treat BVS as a partner, rather than a vendor;
> b. CUES would provide BVS with regular and prominent access/placement in CUES' marketing outlets, including its web site, in its publications and at conferences/conventions CUES organized throughout each year;
> c. CUES would provide BVS access to credit union executives among CUES' members, including CEO level; and
> d. CUES would invest substantial marketing dollars to promote/advance the relationship.

BVS' First Amended and Substituted Complaint and Jury Demand (docket number 23) at 3; ¶ 11.

On May 31, 2011, BVS and CUES entered into a written Master Agreement and related Addendum. According to BVS, the agreement set forth certain marketing activities CUES was required to perform. BVS maintains CUES failed to perform its required marketing activities. Specifically, BVS' amended complaint asserts:

> From the onset of the parties' relationship, CUES failed and refused to perform the required marketing activities, or performed them so poorly as to constitute a material breach of the contract. These failures included, but are not limited to:

3

  a. Failing to develop a marketing campaign to advance the BVS relationship;
  b. Failing to treat BVS as a partner, but rather treating BVS as a vendor, contrary to promises made;
  c. Failing to allow BVS to submit meaningful editorial copy or advertisements in CUES' publications;
  d. Failing to provide BVS with promised access at conferences, conventions and seminars;
  e. Failing to invest adequate marketing funds to advance the partnership/relationship; and
  f. Trying to charge BVS for services it promised to provide without charge.

BVS' First Amended and Substituted Complaint and Jury Demand (docket number 23) at 4; ¶ 15. BVS maintains it performed on its responsibilities and paid CUES royalties. In July 2015, BVS filed the instant lawsuit due to CUES' alleged breach of the Master Agreement and related Addendum. BVS filed its amended complaint on March 2, 2016, seeking declaratory relief (Count I), and damages for breach of contract (Count II) and fraud/fraud in the inducement (Count III).

  In Count III of its amended complaint, BVS alleges CUES "falsely represented to BVS that CUES intended to work in partnership with BVS, including developing a marketing plan, providing free access to its publications, providing free and meaningful access to conferences, conventions and seminars, and allocating/spending funds for marketing on BVS' behalf."[1] BVS also claims CUES representations in partnering with BVS were false, and "instead intended to secure royalties/commissions from BVS' existing customer base without investing in a serious effort to expand the customer base."[2] BVS further maintains CUES knew its representations were false or were made recklessly

---

[1] BVS' First Amended and Substituted Complaint and Jury Demand (docket number 23) at 6; ¶ 28.

[2] *Id.*; ¶ 29.

because CUES' "corporate structure and practice did not allow for the type of relationship CUES promised to BVS."[3] Finally, BVS alleges CUES "intended to deceive BVS to enable CUES to obtain an immediate revenue stream without investing funds."[4] BVS claims it would not have entered into the Master Agreement and related Addendum but for CUES' false representations.[5] On March 16, 2016, CUES moved to dismiss BVS' amended complaint in its entirety and proceed under the original complaint filed by BVS. Alternatively, CUES seeks dismissal of Count III of BVS' amended complaint.

Other facts that are significant for making a determination on CUES' motion to dismiss will be discussed, as necessary, in the Court's consideration of the legal issues presented.

## IV. MOTION TO DISMISS

### A. Standard of Review for a Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) authorizes the dismissal of a claim if the plaintiff fails to state a claim upon which relief can be granted. In assessing a motion to dismiss, courts view the allegations in the complaint in the light most favorable to the non-moving party. *In re Operation of Missouri River System Litigation*, 418 F.3d 915, 917 (8th Cir. 2005). In discussing Rule 12(b)(6) motions to dismiss, the Eighth Circuit Court of Appeals has stated that such motions:

> '[do] not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.' *Bell Atlantic Corp. v. Twombly*, ___ U.S. ___, 127 S. Ct. 1955, 1964-65, 167 L. Ed. 2d 929 (2007). The complaint must allege facts, which, taken as true, raise more than a

---

[3] *Id.*; ¶ 31.

[4] *Id.* at 7; ¶ 32.

[5] *Id.* at 7; ¶ 35.

5

speculative right to relief. *Id.* at 1965. Where the allegations
show on the face of the complaint there is some insuperable
bar to relief, dismissal under Rule 12(b)(6) is appropriate.
*Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 546 (8th Cir.
1997).

*Benton v. Merrill Lynch & Co., Inc.*, 524 F.3d 866, 870 (8th Cir. 2008); *see also Missouri River System Litigation*, 418 F.3d at 917 (A court may "dismiss the case only when it appears beyond doubt that the plaintiff can prove no set of facts in support of [the plaintiff's] claim which would entitle [the plaintiff] to relief."); *Strand v. Diversified Collection Service, Inc.*, 380 F.3d 316, 317 (8th Cir. 2004) ("A motion to dismiss should be granted 'as a practical matter . . . only in the unusual case in which a plaintiff includes allegations that show, on the face of the complaint, that there is some insuperable bar to relief.' *Frey v. Herculaneum*, 44 F.3d 667, 671 (8th Cir. 1995).").

### B. Does Count III of BVS' Amended Complaint Allege Fraud with Particularity?

CUES argues Count III of BVS' amended complaint (fraud/fraud in the inducement) should be dismissed because it fails to satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). Specifically, CUES asserts BVS' fraud/fraud in the inducement claim is vague and fatally subjective. BVS responds that Count III of its amended complaint meets the heightened pleading requirement of Rule 9(b), and adequately identifies the statements it alleges are fraudulent, identifies the speaker of the statements, identifies when the statements were made, and explains why the statements are fraudulent.[6]

Federal Rule of Civil Procedure 9(b) provides:

> **(b) Fraud or Mistake; Conditions of the Mind.** In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent,

---

[6] *See* BVS' First Amended and Substituted Complaint and Jury Demand (docket number 23) at 3, 6; ¶¶ 11, 12, 28, 31.

> knowledge, and other conditions of a person's mind may be alleged generally.

FED. R. CIV. P. 9(b). "To satisfy the particularity requirement of Rule 9(b), the complaint must plead such facts as the time, place, and content of defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result. . . . Put another way, the complaint must identify the who, what, where, when, and how of the alleged fraud." *United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006) (citations and internal quotations omitted); *see also BJC Health System v. Columbia Casualty Co.*, 478 F.3d 908, 917 (8th Cir. 2007) ("Under Rule 9(b), a plaintiff must plead 'such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby.' *Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 920 (8th Cir. 2001)."). "'Conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule.'" *BJC Health System*, 478 F.3d at 917 (quoting *Commercial Property Investments, Inc. v. Quality Inns International, Inc.*, 61 F.3d 639, 644 (8th Cir. 1995)).

The Eighth Circuit Court of Appeals has cautioned that Rule 9(b) is to be interpreted "'in harmony with the principles of notice pleading.'" *BJC Health System*, 478 F.3d at 917 (quoting *Schaller Telephone Co. v. Golden Sky Systems, Inc.*, 298 F.3d 736, 746 (8th Cir. 2002)). The purpose of Rule 9(b) is to allow defendants to respond "'specifically, at an early stage of the case, to potentially damaging allegations of immoral and criminal conduct.'" *BJC Health System*, 478 F.3d at 917 (quotation omitted).

Having thoroughly reviewed BVS' amended complaint, and balancing the requirements of Rule 9(b) and the "principles of notice pleading," the Court finds that BVS has complied with Rule 9(b). Specifically, BVS identified the who (Dennis Porter), what ("falsely represented to BVS that CUES intended to work in partnership with BVS, including developing a marketing plan, providing free access to its publications, providing

7

free and meaningful access to conferences, conventions and seminars, and allocating/spending funds for marketing on BVS' behalf"), where and when (partnership discussions between CUES CFO Dennis Porter and BVS President Roy Karon during the time period of March-May, 2011), and how (CUES made false representations to secure royalties/commissions from BVS' existing customer base without investing in a serious effort to expand the customer base, CUES' corporate structure and practice did not allow for the type of relationship CUES promised to BVS, and CUES intended to deceive BVS to enable CUES to obtain an immediate revenue stream without investing funds) required by Rule 9(b).[7] *See Joshi*, 441 F.3d at 556; *see also BJC Health System*, 478 F.3d at 917. Accordingly, the Court finds BVS' amended complaint complies with Rule 9(b)'s heightened pleading requirements for allegations of fraud.

### C. Does Count III of BVS' Amended Complaint Fail Because Future Intentions are Not Actionable?

CUES argues BVS' fraud/fraud in the inducement claim fails because a "statement of intent to perform is not actionable fraud, unless when the statement was made the speaker had an existing intention not to perform."[8] Specifically, CUES asserts:

> All of BVS' allegations of fraud are statements of intent to perform future acts, BVS has not and cannot make a claim that Mr. Porter or anyone else at CUES intended not to perform when any of the alleged misrepresentations were made[.] . . . Therefore, BVS' Amended Complaint should be dismissed for failing to state a claim upon which relief can be granted.

CUES' Brief in Support of Motion to Dismiss Plaintiff/Counterclaim Defendant's Amended Complaint (docket number 26) at 8.

---

[7] BVS' First Amended and Substituted Complaint and Jury Demand (docket number 23) at 3, 6-; ¶¶ 11-12, 28-32, 35.

[8] CUES' Brief in Support of Motion to Dismiss Plaintiff/Counterclaim Defendant's Amended Complaint (docket number 26) at 7.

BVS responds that CUES' argument is without merit because BVS' pleadings adequately allege CUES' future intent not to perform. Specifically, BVS asserts:

> CUES' absence of an existing intent to perform its promises is shown by the allegation that CUES' corporate structure and practice did not allow for the relationship promised. *See* Amended Complaint, ¶ 31. BVS also has alleged that CUES failed and refused to perform the written obligations "from the onset of the parties' relationship." Amended Complaint, ¶ 15.

BVS' Resistance to Motion to Dismiss (docket number 27) at 6. BVS maintains these allegations create an inference of fraud. BVS explains:

> Indeed, discovery has shown that CUES became so dazzled by the BVS relationship that CUES celebrated its anticipated financial returns even if CUES did nothing to advance the relationship, i.e., spent no marketing dollars. BVS minimally should be allowed to present emails and documents obtained in discovery to show that CUES hungered for the BVS relationship as a means to patch CUES' leaky financial ship, rather than CUES intending to perform its promises.

BVS' Resistance to Motion to Dismiss (docket number 27) at 6-7.

Under Iowa law, "a statement of intent to perform a future act is actionable if when made the speaker had an existing intention not to perform." *Robinson v. Perpetual Services Corp.*, 412 N.W.2d 562, 565 (Iowa 1987) (citations omitted). In order to state such a fraud claim, "a party must 'plead facts from which it could reasonably be inferred that the promisor had no such intention to perform at the time the promisor made the allegedly false representations.'" *Asbury Square, L.L.C. v. Amoco Oil Co.*, 221 F.R.D., 497, 502 (S.D. Iowa 2004) (quoting *Brown v. North Central F.S., Inc.*, 987 F.Supp. 1150, 1157-58 (N.D. Iowa 1997)). In *Brown*, the district court determined that evidence from which a court could infer an intention not to perform included:

> facts from which it could be inferred that, at the time the promises were made, the defendant would have been unable to perform its promises or had already undertaken action that was inconsistent with its commitments, . . . or that the defendant was insolvent, knew it could not perform the promises,

9

> repudiated the promises soon after they were made, with no intervening change in the situation, failed even to attempt any performance, or continued to offer assurances it was clear that it would not perform as promised.

987 F.Supp. at 1159 (citations omitted). "Mere conclusory statements are insufficient; the party pleading fraud must present "affirmative evidence" by pleading specific facts from which an inference can be drawn that there was no existing intent to perform at the time the promise was made." *Asbury Square*, 221 F.R.D. at 502 (citations omitted). Therefore, "without some showing, through specific factual averments, of an intent not to perform at the time a promise is made, a pleading of fraud necessarily fails under Rule 9(b) for not meeting the particularity requirement." *Id.*

Here, BVS alleges in its amended complaint that CUES: (1) from the outset, failed or refused to perform on the agreement entered into between the parties;[9] (2) made false representations to BVS for the purpose of entering into a partnership to secure royalties/commissions from BVS' existing customers for CUES' own benefit;[10] (3) purposefully "deceived" BVS in order to "obtain an immediate revenue stream without investing funds";[11] and (4) CUES' "corporate structure and practice did not allow for the type of relationship CUES promised to BVS."[12] The Court believes BVS has sufficiently pleaded facts "from which it could be inferred that, at the time the promises were made, the defendant would have been unable to perform its promises or had already undertaken action that was inconsistent with its commitments[.]" *Brown*, 987 F.Supp. at 1159. Moreover, the Court finds BVS has adequately pleaded facts "'from which it could

---

[9] *See* BVS' First Amended and Substituted Complaint and Jury Demand (docket number 23) at 4; ¶ 15.

[10] *Id.* at 6; ¶ 29.

[11] *See* BVS' First Amended and Substituted Complaint and Jury Demand (docket number 23) at 7; ¶ 32.

[12] *Id.* at 6; ¶ 31.

reasonably be inferred that the promisor had no such intention to perform at the time the promisor made the allegedly false representations.'" *Asbury Square*, 221 F.R.D. at 502 (quotation omitted). Accordingly, the Court determines BVS' amended complaint sufficiently alleges facts that create an inference of fraud.

### D. Does BVS' Fraud/Fraud in the Inducement Claim Survive the Integration Clause of the Parties' Written Agreement?

CUES argues "[a]ll of the allegations of fraud contained in BVS's Amended Complaint concern facts or circumstances included within the written contract, and therefore are barred in light of the integration clause."[13] CUES concludes BVS' amended complaint should be dismissed because "[t]he Agreement specifically addresses the same subjects on which BVS bases its fraud allegations, and therefore the Agreement coverage of those same issues precludes BVS' fraud claims as a matter of law."[14] BVS responds that CUES is incorrect, and BVS' fraud/fraud in the inducement claim is not barred by the integration clause included in the written agreement between the parties because it was fraudulently induced to enter into the agreement with CUES.

Under Iowa law, "parol evidence is admissible to prove fraud." *International Mill Co. v. Gisch*, 137 N.W.2d 625, 630 (Iowa 1965). The Iowa Supreme Court explained:

> The admission of evidence for this purpose is not in conflict with the parol evidence rule which renders such evidence inadmissible to contradict or vary the terms of a written contract. Parol evidence is admissible to prove fraud that induced the writing.

*Id.* (citations omitted); *see also C & J Vantage Leasing Co. v. Wolfe*, 795 N.W.2d 65, 85 (Iowa 2011) ("The parol-evidence rule also does not prohibit the admission of extrinsic evidence to prove fraud in the inducement."). In *Northwest Bank and Trust Co. v. First*

---

[13] CUES' Brief in Support of Motion to Dismiss Plaintiff/Counterclaim Defendant's Amended Complaint (docket number 26) at 9.

[14] *Id.* at 11.

11

*Illinois National Bank*, 354 F.3d 721 (8th Cir. 2003), the Eighth Circuit Court of Appeals explained the Iowa law as follows:

> the rule is premised on the principle that the fraudulent inducement precedes the formation of the contract, and that to give preclusive effect to language contained therein would allow a party to bind the defrauded party to the contract through the use of a boilerplate disclaimer.

*Id.* at 726 (citations omitted).

Here, again, BVS asserts "CUES--through its agent Porter--fraudulently induced BVS to enter into the Master Agreement by falsely representing CUES' intent or capacity to perform the agreement."[15] As discussed in section *IV.C.* of this decision, BVS' amended complaint alleges it was fraudulently induced to enter into the Master Agreement with CUES as follows: (1) CUES made false representations to BVS for the purpose of entering into a partnership to secure royalties/commissions from BVS' existing customers for CUES' own benefit;[16] (2) CUES purposefully "deceived" BVS in order to "obtain an immediate revenue stream without investing funds";[17] (3) CUES' "corporate structure and practice did not allow for the type of relationship CUES promised to BVS";[18] and (4) from the outset, failed or refused to perform on the agreement entered into between the parties.[19] The Court concludes BVS has sufficiently pleaded fraudulent inducement preceding the formation of the Master Agreement. *See* Northwest Bank, 354 F.3d at 726.

---

[15] CUES' Brief in Support of Motion to Dismiss Plaintiff/Counterclaim Defendant's Amended Complaint (docket number 26) at 9.

[16] *See* BVS' First Amended and Substituted Complaint and Jury Demand (docket number 23) at 6; ¶ 29.

[17] *See* BVS' First Amended and Substituted Complaint and Jury Demand (docket number 23) at 7; ¶ 32.

[18] *Id.* at 6; ¶ 31.

[19] *Id.* at 4; ¶ 15.

Accordingly, the Court finds CUES' argument regarding the integration clause in the Master Agreement lacks merit.

## V. CONCLUSION

The Court finds BVS' amended complaint complies with Rule 9(b)'s heightened pleading requirements for fraud allegations. The Court also finds BVS' amended complaint properly alleges facts that create an inference of fraud when the contract was executed. Finally, the Court finds CUES' argument regarding the integration clause in the Master Agreement lacks merit. Accordingly, the Court determines CUES' motion to dismiss should be denied.

## VI. ORDER

IT IS THEREFORE ORDERED that the Motion to Dismiss Plaintiff/Counterclaim Defendant's Amended Complaint (docket number 25) filed by Defendant/Counterclaim Plaintiff Credit Union Executives Society, Inc., on March 16, 2016 is hereby **DENIED**.

DATED this 20th day of May, 2016.

_____
JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA